IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

(1) EDWARD POINDEXTER,
(2) BOBBY POINDEXTER, and
(3) MARGARET D. POINDEXTER,
        Plaintiffs,

v.

CITY OF SALLISAW,
        Defendant.

Case No. CIV-11-046-RAW

## ORDER

Before the court is the motion for summary judgment filed by the Defendant, the City of Sallisaw (hereinafter "the City") [Docket No. 43]. Plaintiffs filed their Complaint on February 7, 2011, alleging jurisdiction pursuant to the Family Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2601 *et seq*. The motion for summary judgment is only as to Edward Poindexter (hereinafter "Edward") and Bobby Poindexter (hereinafter "Bobby") (collectively "Plaintiffs"). Plaintiffs' Complaint included three claims: (1) FMLA interference; (2) FMLA retaliation; and (3) equitable estoppel. For the reasons delineated below, the motion is granted.

In its first footnote, the City informs the court: "Plaintiffs have advised the City that Margaret Poindexter will dismiss her claims in this action with prejudice, alleviating the necessity of moving for summary judgment on those claims. Mrs. Poindexter did not qualify for FMLA leave to care for a sick mother-in-law." Margaret Poindexter (hereinafter "Margaret") has yet to file a motion to dismiss this action with prejudice as to herself. The court hereby directs Margaret to file either a motion to dismiss this action with (or without) prejudice as to herself or a brief to show cause as to why this court should not dismiss this action against her no

later than November 18, 2011.

**COMPLAINT**

Plaintiffs allege that on March 11, 2010, Edward and Bobby were absent from work because their elderly mother had hip surgery. They allege that their absence from work that day was covered by the FMLA.

Plaintiffs first claim that the City violated the FMLA by failing to provide its employees: information or notice explaining the provisions of the FMLA, information regarding how to file complaints for violations of the FMLA, and FMLA information in "any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook." Plaintiffs also allege that while the City approved the proposed leave, it failed to inform them before the day of the proposed leave of whether the leave would be covered by the FMLA, as required by the FMLA.

Plaintiffs second claim is that the City retaliated against them for taking FMLA leave. Plaintiffs allege that because of their March 11, 2010 absence, the City retaliated against Plaintiffs in violation of the FMLA by refusing to consider Edward or Bobby for a promotion to the position of crew leader. They claim that they are both experienced and highly qualified for the position and that one of them would have otherwise been promoted. Moreover, they claim that the City Clerk demoted Margaret and transferred her to another department in retaliation. Plaintiffs claim that Margaret was subjected to a hostile work environment because of the FMLA controversies and that her resulting resignation should be considered a constructive discharge.

As evidence of the retaliatory motives toward them, they allege that the City Clerk and the City Manager harshly criticized them publically about their March 11, 2010 absence,

specifically accusing them of abusing the leave provisions.  At the same time, Margaret's direct supervisor allegedly questioned her about her husband's and brother-in-law's absence on March 11, 2010 and criticized them.

Plaintiffs also claim that equitable estoppel prohibits the City from denying that Edward and Bobby were eligible employees under the FMLA or that they were on FMLA leave because the City made a "misrepresentation of fact" to them, which they relied upon to their detriment.[1]  Plaintiffs request damages for back pay and front pay.  They further request attorney fees.

**UNDISPUTED MATERIAL FACTS**[2]

Plaintiffs are no longer employed by the City, but were both City employees in the Electric Department for several years.  On March 10, 2010, Plaintiffs requested and were granted

---

[1] In their response to the summary judgment motion, Plaintiffs argue that equitable estoppel should prevent the City from denying them the possibility of promotion because they relied to their detriment on a misrepresentation of fact made to them by their former supervisor.  The court will address both equitable estoppel arguments below.

[2] The City includes in its motion for summary judgment sixty (60) statements of undisputed material fact.  The court accepts as true for purposes of the summary judgment motion all facts that are not disputed by Plaintiffs.  Plaintiffs dispute in whole or in part the City's statements of undisputed material facts numbered: 1, 2, 3, 4, 5, 6, 11, 12, 22, 32, 33, 36, 37, 47, 49, 59, 50, 56 and 60.  To the extent those facts are disputed by admissible evidence, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to Plaintiffs.
   To the extent, however, that Plaintiffs have made allegations in their affidavits that contradict their prior deposition testimony without explanation and/or conclusory allegations, those will not be considered.  Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806-07 (1999) ("The lower courts . . . have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."); Nichols v. Hurley, 921 F.2d 1101, 1113 (10th Cir. 1990) (citation omitted) ("[C]onclusory allegations without specific supporting facts have no probative value."); Franks v. Nimmo, 796 F.2d 12230, 1237 (10th Cir. 1986).

3

leave to attend their mother's hip surgery on March 11, 2010. Plaintiffs do not claim they were denied FMLA leave. Instead, they claim that the leave they took on March 11, 2010 was or should have been designated as "FMLA leave." The City claims that Plaintiffs requested and took "paid family sick leave" on March 11, 2010.

The City provides ten days of paid family sick leave per calendar year for use when a member of the employee's immediate family is incapacitated by sickness or injury. After a City employee exceeds ten days of paid family sick leave, additional unpaid leave is available under the FMLA. The City's personnel manual provides for up to 12 weeks of FMLA leave to care for a child, spouse, or parent with a serious health condition. This leave may consist of paid and unpaid time. The City's FMLA policy requires employees to exhaust all paid time for which they are eligible before being granted unpaid leave. Paid time may include sick pay and vacation.

Plaintiffs received copies of the January 2009 personnel manual. The manual includes FMLA information. Notice of FMLA rights is posted in every City building, including the Electric Department. Nevertheless, in spite of the postings and manuals, Plaintiffs argue that they were "never instructed" on the difference between sick leave and FMLA leave. The common belief of employees and of the Plaintiffs is that FMLA leave is available for employees when a family member is ill.

The City requires its employees to request FMLA leave from the City Manager through a separate process than ordinary paid sick leave or paid family sick leave. Plaintiffs again argue that they were "never instructed" and did not know that the City requires employees to request FMLA leave from the City Manager. The City personnel manual provides that an employee may apply for FMLA leave by submitting a written request to his or her supervisor, designating

4

available paid time to be applied and the amount of additional non-paid time requested.

The City has never denied a request for FMLA leave. Plaintiffs' requests for leave on March 10, 2010 was submitted on a blue slip for paid sick leave. There is no mention of "FMLA leave" on Plaintiffs' requests.

Plaintiffs claim they were criticized for taking "FMLA leave" by their department head, Will Davis, during a March 2010 meeting. Section 7.6(6) of the City personnel manual directs department heads to "counsel, discuss and instruct their employees periodically to ensure that sick leave benefits are not abused." As part of this regular practice, the City Manager, Bill Baker, asked superintendents within the City to counsel employees about sick leave and how important it was to not waste or abuse it. In response to Bill Baker's request to remind City employees not to abuse sick leave, Will Davis reminded all Electric Department employees at the March meeting not to abuse or waste sick leave.

Plaintiffs claim the March meeting occurred a week or two after March 11, 2010. During the March meeting, Will Davis did not single out Bobby or Edward by name or accuse them of abusing sick leave. Instead, Bobby asked whether Plaintiffs were abusing sick leave, and in response, Will Davis said, "if the shoe fits, wear it." At that point, Bobby and Will Davis argued. Bobby accused Will Davis of being a sorry boss and trying to run the City with his wife, City Clerk, Dianna Davis. Without pointing to any other specifics, Plaintiffs claim that Will Davis's actions and mannerisms made it clear he was accusing them of abusing sick leave.

In 2010, Edward took 67 hours of paid family sick leave and 15 hours of paid sick leave. All but 12 hours of those hours were taken after March 12, 2010. In 2010, Bobby took 56 of paid family sick leave and 57.5 hours of paid sick leave. All but 48 of those hours were taken after March 11, 2010. Plaintiffs were never denied leave requested in 2009, 2010 or 2011 and

5

never lacked sufficient leave to take off work for their own or a family member's health. After the March meeting, the relationship between Will Davis and Plaintiffs deteriorated.

Plaintiffs maintain that the City has a policy of discouraging employees from taking FMLA leave, but they have not identified any such policy. Plaintiffs contend that the City Manager, Bill Baker, and the City Clerk, Dianna Davis, have harshly criticized them publicly, but they have not identified any such public statements. Plaintiffs claim that Margaret heard public statements by the City Manager or City Clerk, but Margaret testified that she was not aware of any such statements.

Edward has never heard Dianna Davis say Plaintiffs were abusing their sick leave or other sick leave and knows of nothing Dianna Davis has ever done to prevent him or any other employee from taking FMLA leave. Edward cannot identify anything Bill Baker has done to keep employees from taking FMLA leave. Bobby has no evidence that Dianna Davis or Bill Baker have prevented or discouraged employees from taking FMLA leave.

Bobby began work for the City's Electric Department seventeen years ago. Edward began working for the same department about fifteen or sixteen years ago. At the time Edward transferred to the Electric Department, the City had a nepotism policy that precluded members of an immediate family from working in the same department. Plaintiffs received a special exception from a prior City Manager, Jim Hudgens. In 2008, current City Manager, Bill Baker, recommended a change to the nepotism policy to make it less restrictive. The new policy allows immediate family members to work in the same department so long as they do not supervise one another.

Bobby and Edward are journeymen linemen. The lead man position became open upon Jack Lillard's retirement in December 2010. The lead man position supervises the linemen. The

City claims that it denied Bobby and Edward the lead man position in December 2010 because it would violate the City's nepotism policy precluding them from supervising one another.

Plaintiffs were told by Jack Lillard that they would be able to move up to lead man despite the nepotism policy. Bill Baker testified that Jack Lillard misunderstood him when he explained that Plaintiffs would be allowed to work in the same department, but would be subject to the prohibition against supervising one another. Plaintiffs have not identified any evidence suggesting that Bill Baker knew of or had direct knowledge that they requested and took leave for their mother's hip surgery on March 11, 2010.

Edward never had a discussion with Bill Baker, Will Davis or any other supervisor about FMLA leave. Bobby never had a discussion with Bill Baker about FMLA leave or asked anyone at the City about how to make a claim for FMLA leave. No one at the City has ever told Bobby that he did not receive the lead man promotion because he took FMLA leave. Dianna Davis has never said anything to Bobby about FMLA leave or his March 11, 2010 leave.

Edward's son Austin also works in the Electric Department. Edward admits that Bobby, rather than himself, should have been promoted to lead man. After the City deemed Edward and Bobby ineligible for promotion in the Electric Department, it offered them each a $2.00 per hour raise. This raise would have been more than either one of them would have received if offered the lead man position. Plaintiffs received a cost of living raise in 2011.

Other than the claimed loss of promotion, Plaintiffs have not been reduced in any way since January 2011. Nevertheless, Plaintiffs argue that because they relied upon Jack Lillard's advice that the nepotism policy would not apply to them, they missed opportunities to move to other departments and/or apply with a private employer.

**SUMMARY JUDGMENT**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006).

At this stage, however, Plaintiffs may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of their Complaint. Id. Moreover, "evidence based on 'mere speculation, conjecture, or surmise' will not defeat summary judgment." Zinna v. Cook, 428 Fed.Appx. 838, 839 (10th Cir. 2011) (citation omitted).

**FMLA**

The FMLA provides in pertinent part that an eligible employee[3] is entitled to a total of 12 workweeks of leave during any 12-month period in order to care for a parent who has a serious health condition. 29. U.S.C. § 2612(a)(1)(C).

Section 2617(a) of Title 29 authorizes eligible employees to bring action civil against employers who violate 29 U.S.C. § 2615. Section 2615(a) provides:

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

---

[3]An "eligible employee" is an individual who has been employed "for at least 12 months by the employer with respect to whom leave is requested under section 2612" and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Defendant does not dispute that Plaintiffs are eligible employees.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

**First Claim – Interference**

To establish an FMLA interference claim, Plaintiffs must show that: (1) they were entitled to FMLA leave; (2) some adverse action by the City interfered with their right to take FMLA leave; and (3) the City's action was related to the exercise or attempted exercise of their FMLA rights. Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006). "Section 2615(a)(1) is not a strict liability statute." Id.

Plaintiffs do not claim that they were ever denied FMLA leave. In fact, they were never denied any leave, whether FMLA or sick leave. Instead, Plaintiffs claim that on March 10, 2010, Edward and Bobby requested and were granted "FMLA leave." The City maintains that the leave requested and granted was not FMLA leave, but "paid family sick leave" in accordance with the City's policy. The City provides ten days of paid family sick leave per calendar year, after which, additional unpaid leave is available under the FMLA. The City offers up to 12 weeks of FMLA leave, including the earned paid leave that must be exhausted first and the remainder in unpaid leave.

Notice of FMLA rights is posted in every City building, including the Electric Department where Plaintiffs worked. Moreover, Plaintiffs received copies of the personnel manual that includes FMLA information. Plaintiffs contend, however, that "[i]n spite of any postings or manuals, the Plaintiffs were never at any time instructed on the difference between sick leave and FMLA leave." They further allege that the "common belief of employees and of

9

the Plaintiffs was that FMLA was leave for the employee to get if a member of his family was ill."[4] Notwithstanding this "common belief," Plaintiffs argue they "were never instructed and did not know that the City required employees to request FMLA from the City Manager."

The Tenth Circuit has noted that "FMLA leave is not dependent upon the absence of earned leave. Specifically 'when an employee's leave qualifies both under the FMLA and under the employer's paid leave policy[,] the employer may permit the employee to use his FMLA leave and paid sick leave sequentially, or the employer may require that the employee use his FMLA leave entitlement and his sick leave concurrently.'" Ney v. City of Hoisington, Kansas, 264 Fed.Appx. 678, 680 n.1 (10th Cir. 2008) (citation omitted). The City requires its employees to use their paid leave concurrently with their FMLA leave.

The Supreme Court has noted that the FMLA does not prohibit such policies. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 87 (2002). "Some employers, like Wolverine, allow more than the 12-week annual minimum; others offer paid leave. . . . As long as these policies meet the Act's minimum requirements, leave taken may be counted toward the 12 weeks guaranteed by the FMLA." Id. The City meets the Act's minimum requirements. In fact, by offering 10 days of paid family sick leave, the City offers more than the Act requires.

For purposes of the summary judgment motion, the court finds that Edward and Bobby were eligible for and entitled to FMLA leave.[5] The court cannot find, however, that any adverse

---

[4] Plaintiffs provide deposition testimony of co-workers who held this belief. While this may be admissible evidence tending to show whether the City's employees were, in fact, informed of its FMLA policies, ultimately it is of no effect, as the City did post FMLA policy notices, did include the FMLA policies in the employee manual, and as discussed more fully below, Plaintiffs suffered no prejudice from any lack of knowledge of the City's FMLA policies.

[5] Indeed, under the City's FMLA policy, the City technically would consider the leave Plaintiffs took on March 11, 2010 "FMLA leave."

action by the City interfered with their right to take FMLA leave. City policy requires them to take paid family sick leave before unpaid FMLA leave. Edward and Bobby requested and were granted paid family sick leave.

Even if Plaintiffs were not informed on the differences between sick leave and FMLA leave, they were not denied any leave for which they were entitled. They suffered no prejudice. Section 2617 "provides no relief unless the employee has been prejudiced by the violation . . . ." Id. at 89. The FMLA does punish an employer's failure to provide timely notice of FMLA designation, but that punishment is simply the denial to the employer of any credit for leave granted. The employee will still be entitled to his or her 12 weeks of FMLA leave. Id. at 88-89.

Thus, even if Plaintiffs are correct that the City did not properly inform them of their FMLA rights, because they suffered no prejudice, their claims are not actionable. Nevertheless, if they were not properly informed of the FMLA designation, and given that the City even contends that the March 11, 2010 leave was not "FMLA leave," then Plaintiffs would have still been entitled to their full 12 weeks of FMLA leave in the remainder of the year as provided by the FMLA. Id.

The City did not interfere with, restrain, or deny Plaintiffs' rights under the FMLA. As to Plaintiffs' first claim, there is no genuine issue of any material fact, and the City is entitled to summary judgment as a matter of law. The motion for summary judgment, therefore, is GRANTED as to the first claim.

**Second Claim – Retaliation**

"Retaliation claims under the FMLA are subject to the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S.Ct. 1817, 36 L.Ed.2d 668

11

(1973)." Metzler, 464 F.3d at 1170. "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation." Id. To establish a prima facie case for an FMLA retaliation claim, Plaintiffs must show that: (1) they engaged in protected activity; (2) the City took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. Id. at 1171.

If the plaintiff establishes a prima facie case of retaliation, "then the defendant must offer a legitimate, non-retaliatory reason for the employment action." Id. at 1170. "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." Id.

While the City did not designate the leave taken on March 11, 2010 as "FMLA leave," for purposes of the summary judgment motion, the court finds that the leave qualifies as FMLA leave. The court also accepts for purposes of the summary judgment motion that the denial of the promotion to Edward or Bobby was an action a reasonable employee would consider materially adverse.[6]

All that remains, therefore, is to find whether Plaintiffs have established a causal connection between the leave taken in March 2010 and the City's failure to promote one of them to the position of crew leader in December 2010. "The 'critical inquiry' at this prima facie stage is 'whether [Plaintiffs have] demonstrated that [the City's] action occurred under circumstances

---

[6]The court accepts this despite the fact that Edward has stated that Bobby should have been given the promotion. If Edward was not the one most qualified and eligible to be promoted, the court doubts that the City's failure to promote him could be viewed as an adverse employment action. Additionally, because the City offered both Edward and Bobby a $2.00 per hour raise (more than the pay raise either of them would have received had they been granted the promotion) after making the assessment that they were not qualified for a promotion because of the City's employee nepotism policy, the court is unaware of any damages Plaintiffs suffered.

12

which give rise to an inference of unlawful discrimination.'" Id. at 1171.

Plaintiffs arguments that a causal connection exists are: (1) that "the city tries to discourage employees from taking such days," as evidenced by the fact that during the March meeting at the Electric Department, the department head, Will Davis, talked to the Electric Department employees about abusing sick leave, (2) that after the March meeting, Dianna Davis (Will's wife) had a discussion with Margaret, and (3) that there was temporal proximity between the two events. This is not sufficient to establish a causal connection. Plaintiffs have failed to state a prima facie case for retaliation.

At the March meeting, Will Davis simply warned all of the employees in the Electric Department against abusing sick leave. Will Davis did not single out Plaintiffs. Instead, Bobby asked Will Davis whether Plaintiffs were abusing sick leave. Will Davis replied, "if the shoe fits, wear it." Then the two men argued. Neither FMLA leave in general, nor Plaintiffs' specific March 11, 2010 leave was even mentioned. This incident alone is insufficient to create a genuine issue of material fact regarding a causal connection.

As to the discussion between Dianna Davis and Margaret, the deposition transcripts simply show that Dianna Davis was upset about the argument that went on between her husband, Will Davis, and Bobby at the March meeting and the fact that her name had been brought up by Bobby. This adds nothing to an argument that the City intended to discriminate against the Plaintiffs.

Plaintiffs also argue that the temporal proximity between the March meeting and December employment action establishes causation. Unless an adverse employment action "is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." Piercy v. Maketa, 480 F.3d 1192,

1198 (10th Cir. 2007) (citations omitted). "For example, an adverse employment action that happened more than three months after the protected activity was not entitled to a presumption of causation." Id. Thus, the nine month proximity alone does not establish causation. Moreover, this proximity combined with Will Davis's warning against abusing sick leave at the March meeting, absent any singling out of Plaintiffs or even referring to FMLA leave or Plaintiffs' March 11, 2010 absence, and the subsequent discussion between Dianna Davis and Margaret do not establish causation.

Even if Plaintiffs had stated a prima facie case, the City gave a legitimate, non-retaliatory reason for not promoting Edward or Bobby to the position of crew leader – the City's employee nepotism policy. The City has a policy that family members may not supervise one another. The City has even changed the nepotism policy to allow Edward and Bobby to work together, but they remained subject to the prohibition against supervising one another.

Plaintiffs argue that the nepotism policy reason is pretext. They argue that the policy prohibiting a family member from supervising another family member is currently being waived by the City for two employees in a different department. Fire Chief Armstrong supervises Captain Ray Armstrong. Plaintiffs maintain that Chief Armstrong supervising his brother is a clear violation of the nepotism policy. Ray Armstrong, however, is a volunteer firefighter, not a City employee; thus, the nepotism policy would not apply to him.[7] In fact, Ray Armstrong has been denied an employee position because if he were an employee, his working under the supervision of his brother would violate the nepotism policy.

---

[7]The nepotism policy is included within the "Personnel Policies for Municipal Employees." Plaintiffs have provided no evidence that those employee policies apply to volunteers.

14

Plaintiffs argue that this distinction – volunteer, as opposed to employee – is not fair because even as a volunteer firefighter, Ray Armstrong is paid for his services. Still, Ray Armstrong is a volunteer, not an employee subject to employee policies. The fact that Chief Armstrong is allowed to supervise his *volunteer* brother in the fire department does not establish a genuine dispute of material fact that the City's legitimate reason for not considering Bobby or Edward for the promotion in December 2010 – the City's *employee* nepotism policy – was mere pretext. Plaintiffs argue that the nepotism policy contains no definitions and does not by its terms exclude Captain Armstrong, but they fail to notice that the policy itself is included in the personnel policies for *employees*.

**Equitable Estoppel**

In their Complaint, Plaintiffs claim that equitable estoppel prevents the City from denying that they were eligible for and, in fact, were on FMLA leave on March 11, 2010. This is of no effect for purposes of the summary judgment motion, however, because for purposes of this motion, the court has presumed that Plaintiffs were on FMLA leave.

Plaintiffs also claim that they relied upon to their detriment information given to them by their former supervisor, Jack Lillard, in 2009 that they would not be subjected to the City's nepotism policy preventing one of them from supervising the other. Plaintiffs argue that because they believed that they were not subject to the nepotism policy, they missed opportunities to move to other departments and/or apply with a private employer.

In Oklahoma, the elements of equitable estoppel are: "(1) a false representation or concealment of facts, (2) made with actual or constructive knowledge of the facts, (3) to a person without knowledge of, or the means of knowing, those facts, (4) with the intent that it be acted

15

upon, and (5) the person to whom it was made acted in reliance upon it to his detriment." <u>Carter v. Schuster</u>, 227 P.3d 149, 154 (Okla. 2009) (citation omitted).

It is undisputed that Jack Lillard was mistaken in his belief that the nepotism policy would not apply to Plaintiffs. At his deposition, Bill Baker testified that Jack Lillard misunderstood him. Thus, Jack Lillard did not make a false representation or concealment of facts with actual or constructive knowledge of the facts. Moreover, even if he had, Plaintiffs have not shown that the representation was made with the intent that it be acted upon or that they had no means of knowing the facts. This claim fails.

**CONCLUSION**

Accordingly, the motion for summary judgment [Docket No. 43] is hereby GRANTED. The action against Edward and Bobby is dismissed. Margaret shall file either a motion to dismiss this action with (or without) prejudice as to herself or a brief to show cause as to why this court should not dismiss this action against her no later than November 18, 2011.

IT IS SO ORDERED this 7th day of November, 2011.

*Ronald A. White*
Ronald A. White
United States District Judge
Eastern District of Oklahoma